# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| BRYAN ANTHONY REO, | Case No. 1:20-cv-02509 |
| Plaintiff, | **DEFENDANT WINRED TECHNICAL SERVICES LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| WINRED TECHNICAL SERVICES LLC, | JUDGE SOLOMON OLIVER, JR. |
| Defendant. | MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant WinRed Technical Services LLC ("WRTS") moves to dismiss Plaintiff's Complaint because Plaintiff's Complaint fails to allege sufficient facts demonstrating WRTS violated the Telephone Consumer Protection Act ("TCPA"). Accordingly, Plaintiff cannot state a claim upon which relief can be granted and his Complaint must be dismissed. In the alternative, WRTS requests that this matter be stayed pending the resolution of *Facebook, Inc. v. Duguid*, No. 19-511, currently pending in the United States Supreme Court.

A Memorandum in Support of this Motion is attached hereto.

Respectfully submitted,

*/s/ Jason R. Stuckey*
Jason R. Stuckey (0091220)
Bricker & Eckler LLP
201 E. Fifth Street, Suite 1110
Cincinnati, Ohio 45402-1800
Telephone: 513-870-6687

1

Facsimile: 513-870-6699

*Attorney for Defendant*
*WinRed Technical Services LLC*

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**</u>

**I.     INTRODUCTION**

On October 19, 2020, Plaintiff filed a facially deficient Complaint with respect to WRTS alleging certain violations under the Telephone Consumer Protection Act ("TCPA") [Dkt. 1]. Plaintiff filed the Complaint in the Court of Common Pleas of Lake County, Ohio. On November 6, 2020, WRTS filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 that removed this case to the United States District Court for the Northern District of Ohio, Eastern Division. (ECF No. 1). In his Complaint, Plaintiff alleges that he improperly received seven text messages from Defendant and is therefore seeking general, statutory, liquidated, and treble damages, as well as injunctive relief. [Dkt. 1 at ¶¶ 10-16, 46-48]. Plaintiff fails to state a claim under Rule 12(b)(6) because Plaintiff failed to properly allege that the text messages were sent by WRTS, or even that an "automatic telephone dialing system" ("ATDS") was used to send the text messages. Alternatively, this case presents a question that is currently being reviewed by the U.S. Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, and it should therefore be stayed pending resolution of that case. For the reasons that follow, this Court should dismiss Plaintiff's lawsuit for failure to state a claim or, in the alternative, stay this case pending Supreme Court resolution of *Facebook*.

**II.     <u>PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6).</u>**

<u>**A. Plaintiff's Complaint Fails to State a Claim Because It Alleges No Plausible Set of Facts That Show WRTS Sent Communications Using an ATDS.**</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). While "detailed factual allegations" are not required, Rule 8 does require

"more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To wit, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all factual allegations in a complaint as true, that "tenet … is inapplicable to legal conclusions." *Id.* Critically, the *Iqbal* standard requires a plaintiff to provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and must instead be facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "This means that conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations," are insufficient to create a well-pleaded complaint. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). Here, Plaintiff merely offers conclusory allegations directed at WRTS and fails to assert factual allegations that, if taken as true, create a reasonable inference that WRTS (1) called or texted Plaintiff, or (2) did so using an ATDS.

The Complaint alleges multiple violations of the TCPA. [Dkt. 1 at ¶¶ 34-45]. As pleaded, a violation under the TCPA occurs when: "[A]ny person within the United States … make[s] any call … using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii). Therefore, for a plaintiff to allege a cause of action under section 227(b)(1)(A)(iii) of the

TCPA, he must allege that the defendant (1) placed a call "using any automatic telephone dialing system;" (2) "to a cell phone number;" and (3) did so "without obtaining the prior express consent of the called party." *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016) (internal quotation marks omitted). Should a plaintiff fail to properly plead any of those three elements, he would fail to state a claim upon which relief can be granted under Rule 12(b)(6).

Throughout the Complaint, Plaintiff makes conclusory allegations, such as "Defendant repeatedly contact[ed] Plaintiff" and "Defendant simply switched numbers and began to text Plaintiff." [Dkt. 1 at ¶¶ 8, 11-16]. There is nothing within the language of the complained-of messages, however, that implicates WRTS in the sending of any messages. *See* [Dkt. 1 at ¶ 10]. In fact, WRTS has never sent text messages soliciting donations to any person, including Plaintiff. *See* Ex. A at ¶ 15. Plaintiff relies on conclusory allegations in order to allege that WRTS was involved in sending the text messages in question. The law requires more of Plaintiff, and the allegations against WRTS fall well short of the required federal pleading standards. Therefore, the claims against WRTS should be dismissed under Rule 12(b)(6).

Additionally, of specific importance in analyzing Plaintiff's pleading failures is the statutory definition of the term "automatic telephone dialing system." The TCPA defines an autodialer as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). At the motion to dismiss stage, Plaintiff must properly allege facts that, taken as true, could lead to the reasonable inference that WRTS used an

ATDS to contact him. *See Iqbal*, 556 U.S. at 678. As will be shown, Plaintiff has failed to "nudge[] [his] claim[] across the line from conceivable to plausible," and therefore the Complaint should be dismissed. *See Twombly*, 550 U.S. at 570.

The Complaint contains a few conclusory references to bolster the insufficient allegation that Defendant used an autodialer. *See* [Dkt. 1 at ¶¶ 19, 25-26]. Paragraph 19 contains the conclusory statement that "Defendant uses a device that meets the current definition of an Automated Telephone Dialing System." [Dkt. 1 at ¶ 19]. Paragraph 25 claims that "[a]ll of Defendant's communications consisted of an automated telephone dialing system . . . ." [Dkt. 1 at ¶ 25]. These are simply the naked assertions of an element of a TCPA violation, unsupported by any facts or even assertion of facts, which are plainly insufficient to state a claim under *Twombly*, *Iqbal*, and their progeny. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

Furthermore, paragraph 19 claims that "the fact that the automatic acknowledgement and response to texting Defendant 'STOP' is automatic, immediate, and identical with each response" supposedly demonstrates that Defendant was using an ATDS. [Dkt. 1 at ¶ 19]. This threadbare allegation is fundamentally deficient in that: (1) there is no factually alleged nexus between the texts at issue and WRTS that indicates they were sent by WRTS; (2) there is nothing about the nature or frequency of the texts at issue that implicates WRTS with respect to violation of the TCPA; and (3) even if the texts at issue in some way implicated WRTS—and they do not—the nature and frequency of text messages are not indicative of whether an autodialer is being used, and thus are not relevant under the TCPA.

6

1. **There Is No Factually Alleged Nexus Between the Content of the Text Messages and WRTS That Implicates WRTS in Sending the Messages.**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, there is nothing alleged in the Complaint that would indicate the texts at issue were sent by WRTS.

There is nothing in the text messages themselves that would lead anyone to identify WRTS as the party responsible for sending text messages to solicit donations on behalf of a political committee. *See* [Dkt. 1 at ¶¶ 10-16]. In fact, Plaintiff misstates the facts concerning the Defendant in his Complaint. One of the few factual allegations specific to WRTS claims that "Defendant WinRed Technical Services LLC is a non-connected PAC existing by and through the laws of the state of Virginia…" [Dkt. 1 at ¶ 3]. This is simply not true. As explained in Exhibit A, WRTS is a technology vendor, not the political action committee identified by Plaintiff in his Complaint. Ex. A at ¶ 4. WRTS "is not a political committee or a political organization." *Id.* at ¶ 11. Plaintiff appears to have conflated WRTS and WinRed, Inc., but "[w]hile WRTS and the PAC share 'WinRed' in their name, they are each separately incorporated entities." *Id.* at ¶ 6.[1]

Plaintiff has presented no facts concerning the content of the alleged text messages that identify them as originating from WRTS.[2] Although Plaintiff does not provide a link

---

[1] While WinRed, Inc. is not a party to this case, WinRed, Inc. also does not send text messages or make phone calls using any ATDS system.

[2] To reiterate, WRTS has never solicited donations via text message. Ex. A at ¶ 15. As explained fully in Exhibit A, political committees that contract with WRTS to build web platforms hire their own P2P vendors for texting without any involvement by WRTS. *See id.* at ¶ 13.

to the website to which he claims the text messages directed him, the website that he refers to is not used to raise funds for WRTS because WRTS does not operate a website on its own behalf.[3] And regardless of the content contained on the related website, there is nothing that indicates that WRTS makes calls or uses ATDS technology in the course of owning and operating a platform for processing donations. This, in conjunction with the other enumerated deficiencies in the Complaint, renders it insufficient as a matter of law under the pleading standard articulated in *Twombly* and *Iqbal*.

### 2. There Is No Nexus Between the Nature or Frequency of the Text Messages and WRTS's Alleged Conduct.

Even if one assumes that the content of the text messages implicates WRTS as the sender—and it does not—there is nothing in the Complaint that, taken as true, ties the automated response to WRTS's alleged conduct. Plaintiff alleges that the "automatic, immediate, and identical" nature of the response messages indicates the use of an ATDS. [Dkt. 1 at ¶ 19]. However, Plaintiff fails to allege a nexus between the content and frequency of the messages that ties them to WRTS specifically. As explained in Section II(A)(1), the website to which Plaintiff was allegedly directed is not hosted by WRTS, and Plaintiff's claim that the responses that he received were "automatic, immediate, and verbatim" does nothing to establish that they were sent by WRTS. [Dkt. 1 at ¶ 26]. In other words, even accepting Plaintiff's conclusory allegations as true, there is still nothing on the face of the Complaint that links the nature or frequency of the messages to WRTS.

---

[3] WRTS does not operate its own website, but creates websites on behalf of political committees that contract with WRTS which are then hosted by the relevant PAC. *See* Ex. A at ¶ 13.

### 3. The Nature or Frequency of Text Messages Is Not Indicative of an ATDS.

Finally, even if one assumes that there was a nexus between the content of the text messages *and* their nature and frequency that indicates they were sent by WRTS, there is still nothing alleged in the Complaint—at least, nothing that is not itself a legal conclusion—that indicates the presence of an ATDS, or that *any* automated system was used by WRTS to send messages to Plaintiff.

The TCPA is wholly silent on the subject of the nature and frequency of a message sent from an autodialer. *See generally* 47 U.S.C. § 227. Plaintiff's allegation that the nature or frequency of a message "is evidence[]" of ATDS technology is unsupportable on its face. [Dkt. 1 at ¶ 19]. Courts in the Sixth Circuit have dismissed TCPA claims that were based merely on the "frequency, number, nature, and character" of messages or calls. *See, e.g.*, *Aikens v. Synchrony Fin.*, 2015 U.S. Dist. LEXIS 115467, at *11 (E.D. Mich. July 31, 2015), *report and recommendation adopted in part*, *Aikens v. Synchrony Fin.*, 2015 U.S. Dist. LEXIS 115023 (E.D. Mich. Aug. 31, 2015). Even if the text messages were "identical or virtually identical" as Plaintiff alleges, [Dkt. 1 at ¶ 26], that does not establish that an ATDS was used because "[i]t is just as conceivable that the text messages were done by hand, or not using an ATDS." *Friedman v. Massage Envy Franchising, LLC*, 2013 U.S. Dist. LEXIS 84250, at *6-7 (S.D. Cal. 2013).

Therefore, due to Plaintiff's numerous pleading deficiencies, he has failed to state a claim under the TCPA.

### III. IN THE ALTERNATIVE, THIS LITIGATION SHOULD BE STAYED PENDING THE SUPREME COURT'S DECISION IN *FACEBOOK, INC. V. DUGUID*.

Plaintiff's claims are insufficient to survive a motion to dismiss for the reasons

stated above. However, should the Court disagree, WRTS requests that the Court stay this matter pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511. The primary issue presented in *Facebook* regarding the definition of ATDS in the TCPA will likely resolve a controlling question of law in this case—the definition of ATDS—and as such, a stay of proceedings pending the Court's decision is appropriate.

"A district court has the inherent power to control its own docket, including the power to stay proceedings." *Snap-on Bus. Solutions, Inc. v. Hyundai Motor Am.*, 2009 U.S. Dist. LEXIS 41179, at *3 (N.D. Ohio 2009) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). In considering a motion to stay, the Court must consider "the potentiality of another case having a dispositive effect on the case to be stayed, the judicial economy to be saved by waiting on a dispositive decision, the public welfare, and the hardship/prejudice to the party opposing the stay." *Michael v. Ghee*, 325 F. Supp. 2d 829, 830 (N.D. Ohio 2004). *Facebook, Inc. v. Duguid*, a matter on appeal from the Ninth Circuit Court of Appeals, is currently pending before the Supreme Court of the United States. *Facebook, Inc. v. Duguid*, No. 19-511 (U.S.). The sole question at issue in that case is "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator." *Id.*, Grant of Cert. There currently exists a circuit split on this question, with the Ninth and Second Circuits adopting a more expansive definition of ATDS than the narrower definitions adopted in the D.C., Third, Seventh, and Eleventh Circuits. *Id.*, Supp. Br. of Pet. at 1. Since the decision in *Facebook* could be dispositive of this matter, and in the event that the Court does not dismiss Plaintiff's claims for one of the

10

other reasons enumerated in this Motion, then it is in the best interests of the parties to stay this matter pending the outcome of *Facebook* in the Supreme Court. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) (noting that a court "may hold one lawsuit in abeyance to abide the outcome of another").

Most courts that have been presented with the application of *Facebook* to TCPA claims have granted a stay pending the outcome of *Facebook*, while a handful of courts have denied similar motions. *See, e.g.*, *Whattoff-Hall v. Portfolio Recovery Assocs., LLC*, 2020 U.S. Dist. LEXIS 130375 (S.D. Cal. Jul. 23, 2020) (granted stipulated motion); *Blower v. Portfolio Recovery Assocs., LLC*, 2020 U.S. Dist. LEXIS 130505 (S.D. Cal. Jul. 23, 2020) (stipulated motion); *Hartranft v. Encore Capital Grp., Inc.*, 2020 U.S. Dist. LEXIS 135309 (S.D. Cal. Jul. 30, 2020) (granting plaintiff's motion to stay); *Hoagland v. Axos Bank*, 2020 U.S. Dist. LEXIS 132831 (S.D. Cal. Jul. 27, 2020) (granting joint motion to stay); *but see, e.g.*, *Komaiko v. Baker Techs, Inc.*, 2020 U.S. Dist. LEXIS 143953 (N.D. Cal. Aug. 11, 2020) (denying motion to stay).

## A. <u>Plaintiff Will Not Be Harmed If The Litigation Is Stayed.</u>

Plaintiff will not suffer irreparable harm if this case is stayed because the Supreme Court is going to issue a decision in *Facebook* during its present term. *Facebook* is set for oral argument before the Supreme Court in less than one month, and the Court will issue a decision in the case by June 2021 at the latest when OT 2020 expires.[4] Plaintiff will not be

---

[4] The case is currently set for oral argument on December 8, 2020. *See Facebook Inc. v. Duguid*, SCOTUSblog, *available at*: https://www.scotusblog.com/case-files/cases/facebook-inc-v-duguid/.

prejudiced by a temporary stay because he can litigate his claim once *Facebook* has been decided and additional light has been shed on this issue. Furthermore, "any delay is outweighed by the hardship of each side incurring greater expense and expending greater resources in an action that ultimately could be dismissed by this Court." *Higgins v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 154628, at *8 (E.D. Ky. 2012). Because *Facebook* will be decided "within a reasonable time in relation to the urgency of the claims presented to the court," *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979), this factor weighs in favor of staying this litigation should the Court reject WRTS's arguments in favor of dismissal.

### B. **WRTS Will Suffer Hardship Absent a Stay.**

There can be no reasonable dispute that the Supreme Court's decision in *Facebook* is central to the issue presented in this case. Although WRTS never sent a text message of any kind to Plaintiff, WRTS could still be forced to defend itself in litigation that might be rendered moot by the Supreme Court's pending decision in *Facebook*. Given the gravity of harm that would befall WRTS if it were forced to proceed with discovery, the hardship to WRTS weighs heavily in favor of granting a stay.

### C. **The Public Interest in Judicial Economy Counsels in Favor of a Stay.**

The issue before the Supreme Court in *Facebook* could be dispositive of this litigation. At the very least, the issues decided in *Facebook* will be central to the parties' claims and defenses here. "The public interest is served by conserving judicial time and resources in the face of duplicative proceedings." *Higgins*, 2012 U.S. Dist. LEXIS 143953, at *7-8. It is difficult to overstate the risk of wasting party and judicial resources when

some, if not all, of discovery, summary judgment, and trial may need to be relitigated in their entirety based on the outcome of the Supreme Court case. Here, "the possibility of duplicative judicial effort counsels against proceeding." *Glazer v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 85799, at *6 (N.D. Ohio 2008). Forcing the parties to undertake an endeavor which could prove fruitless is an extraordinary waste of time and resources.

## <u>CONCLUSION</u>

For the aforementioned reasons, this Court should dismiss Plaintiff's Complaint for failure to state a claim. In the alternative, the Court should stay this litigation pending the Supreme Court's decision in *Facebook*.

Respectfully submitted,

*/s/ Jason R. Stuckey*
Jason R. Stuckey (0091220)
Bricker & Eckler LLP
201 E. Fifth Street, Suite 1110
Cincinnati, Ohio 45402-1800
Telephone: 513-870-6687
Facsimile: 513-870-6699

*Attorney for Defendant*
*WinRed Technical Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2020, the foregoing Defendant WinRed Technical Services LLC's Motion to Dismiss Plaintiff's Complaint was filed electronically and via email and/or regular U.S. mail upon:

Bryan Anthony Reo, Esq.
P.O. Box 5100
Mentor, OH 44060

/s/ Jason R. Stuckey
Jason R. Stuckey (0091220)